UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------------

JAMES H. HOLLAN,

      Plaintiff,

vs.

CUYAHOGA COUNTY COURT OF
COMMON PLEAS, et al.,

      Defendants.

CASE NO. 1:13-CV-1857

OPINION & ORDER
[Resolving Doc. Nos. 1 & 2]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Before the court is *pro se* plaintiff James H. Hollan's civil action against the United States Department of Transportation, Federal Motor Carrier Safety, United States Department of Labor (Wage and Hour Division) and the Occupational Health and Safety Administration (OSHA). Hollan asserts this Court's federal question jurisdiction pursuant to the Administrative Procedures Act (APA), 5 U.S.C. §§ 556, 557 & 702, as well as, 49 U.S.C. § 31105. He maintains he was wrongfully terminated as a commercial truck driver after he refused to "commit a violation" regarding the condition and maintenance of the vehicle. For the foregoing reasons, the complaint is dismissed without prejudice.

Case No. 1:13-CV-1857
Gwin, J.

### I. Background[1]

Hollan first applied for a position with Landstar in June 2003, but his application was denied. The company advised that he was entitled to an explanation if he requested one in writing.[2] Hollan decided, instead, to complain to USIS.[3] As a result, he claims he "got the negative report removed and reapplied" in April 2009, without success (Doc. No. 1 at 4.) On his third application, Hollan requested an explanation of why his previous application was denied. Landstar advised him it needed to re-verify his references. While it appears Hollan was eventually hired, his initial attempts to operate a truck for Landstar did not materialize.

On March 15, 2013, "a person claiming to be a Landstar truck owner claimed he had a truck and a load" to haul the following week. (Doc. No. 1 at 4.) One day before the scheduled haul, the individual registered Hollan for an orientation class. Hollan quit the job he had at the time and attended orientation. Afterward, however, he was unable to locate or reach the owner by telephone. As a result, Hollan contacted Landstar to solicit a list of owners seeking commercial drivers.

It appears one of the contacts may have been Deric and Lisa Whitmore, owners of Wildwood Trucking ("Wildwood"), a company which operates commercial motor vehicles to transport cargo.

---

[1] Because relevant dates, names and facts are missing or sometimes contradictory, the Court will qualify some allegations based it what it can discern from Hollan's statements.

[2] Landstar is a broker that leases trucks to owner/operators throughout the United States and Canada. *See* http://www.leasetolandstar.com/Independence.

[3] USIS, originally known as U.S. Investigations Services Inc., is a private company that conducts background checks through contracts with the United States Office of Personnel Management (OPM).

Case No. 1:13-CV-1857
Gwin, J.

Wildwood hired Hollan as a truck driver in May 2013. At that time, he claims the company knew the truck he was driving needed multiple repairs, but disregarded routine maintenance of the vehicle in violation of "49 U.S.C. § 396.3(1)."[4] Hollan believes the truck's substandard condition resulted from sitting at a dealership for an extended period of time before the owners purchased and operated it for over 250,000 miles with a fuel leak.

On or about May 15, 2013, the owners took the truck to an inspection facility in Bozeman, Montana, where it failed to pass inspection. Wildwood next decided to take the truck to a repair facility authorized by Landstar in Milton, Pennsylvania on May 17, 2013.[5] For reasons not explained in the complaint, the repairs were completed in Bloomsburg, Pennsylvania. Hollan complains it would only have cost $1700 if the truck had been repaired in Montana, but after the wait time in Pennsylvania and having another load put on the truck he lost $3000-6000 in wages.

Hollan claims the owners also falsified permits in Maryland because they booked a load that was oversized by two feet. When they attempted to coerce him to operate the truck without a permit, Hollan refused. Instead, he contacted the State of Maryland and purchased a new permit. Moreover, he alleges that if he had started his route on the date the owner requested he would have encountered several obstacles that would have resulted in violations (i.e. rush hour curfew, construction detours).

---

[4]This is not a valid United States Code citation. The Court believes this may instead refer to Part 396 under Title 49 of the Code of Federal Regulations, Chapter III. Federal Motor Carrier Safety Administration, "Inspection, repair, and maintenance." *See* 49 C.F.R. § 396.3.

[5]

Case No. 1:13-CV-1857
Gwin, J.

On or about July 15, 2013, Hollan telephoned the safety division at Landstar to report that the truck he was driving was no longer safe to operate. He believed that an air leak would reoccur if he completed his route from Phoenix, Arizona to Minnesota. Landstar advised him not to operate the truck. The following day, Hollan contacted "dispatch" to determine if another truck was available. After speaking with "Diane's manager," who conferenced Landstar Safety Representative Wanda Wiggins into the call, Hollan was told to take the load to Minnesota, or have the truck towed to a repair shop. Hollan explained that while "the truck was safe to drive," he feared that the air leak would reoccur if he attempted to drive the truck to Minnesota. When he refused to take the load, Hollan claims he was fired.[6]

Under a paragraph he titles, "1. This is a complaint filed with Osha," Hollan further alleges:

> The truck was shut down as unsafe to operate under 49usc31105. All the requirements were met under the . . . statute. I was fired for refusing to take the load on the truck. I cited 49 usc31105, and agreed to take the load if Landstar would put in writing that I had tried to stop the truck. They refused. I agreed to take the load and turn it into the highway patrol to put out of service. I was then fired for moving a truck that Landstar claims they told me to park. Which under 49usc31105 is retaliation.

---

[6]On an earlier page, Hollan also states

> The truck was shut down as unsafe to operate under 49usc31105. All the requirements were met under the . . . statute. I was fired for refusing to take the load on the truck. I cited 49 usc31105, and agreed to take the load if Landstar would put in writing that I had tried to stop the truck. They refused. I agreed to take the load and turn it into the highway patrol to put out of service. I was then fired for moving a truck that Landstar claims they told me to park. Which under 49usc31105 is retaliation.

(Doc. No.1 at 5.)

Case No. 1:13-CV-1857
Gwin, J.

(Doc. No.1 at 5.) He does not disclose whether he formally filed a complaint with OSHA, or, if so, whether he received a response. Hollan alleges Landstar is "in violation of hiring, investigating, testing, and records maintenance regulations." (Doc. No. 1 at 4.)

Hollan filed complaints through the Federal Motor Carrier Safety Administration (FMCSA) on the Department of Transportation's website. (Doc. No. 1 at 8.) Although, he filed "[f]ive or six complaints . . . all but one was erased. I was told that I could only file one complaint a day." *Id*. When attempted to discuss how to file more complaints with the field office, no one would return his telephone call. Hollan does state he spoke with "Kenny Roger," who advised that the FMCSA does not "have jurisdiction with the complaint with Maryland." *Id*. Hollan believes they do.

## II. Surface Transportation Assistance Act, 49 U.S.C. §31101, et seq.

Congress enacted the Surface Transportation Assistance Act (the "STAA") in 1982, (formerly found at 49 App. U.S.C.A. §§ 2301-2316), 49 U.S.C. §§ 31101-31115, to require the Department of Transportation Federal Highway Administration to establish safety regulations for long-distance drivers and motor carriers concerning everything from the maximum number of hours a driver may drive to the use of retread tires on commercial vehicles. *See* 49 U.S.C.. §§ 31501 et. seq. (2007). Under the Federal Motor Carrier Safety Regulations and the STAA, drivers who refuse to break the law or drive vehicles they believe to be unsafe are afforded some degree of protection against retaliation against employees. To the extent this reflects the nature of Hollan's complaint, this Court lacks jurisdiction over the matter.

## III. Judicial Review - Court of Appeals, Only

A federal court has leeway "to choose among threshold grounds for denying audience to a

-5-

Case No. 1:13-CV-1857
Gwin, J.

case on the merits." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 100–101, n. 3 (1998). "Subject-matter limitations on federal jurisdiction ... must be policed by the courts on their own initiative ...." *Ruhrgas*, 526 U.S. at 583; *United States v. Bowers*, 615 F.3d 715, 718 (6th Cir. 2010). For the reasons that follow, this Court lacks jurisdiction over Hollan's claims.

As noted earlier, Hollan is entitled to certain employment protections as a commercial truck driver. The relevant statute says that a

> A person may not discharge an employee, or discipline or discriminate against an employee regarding pay, terms, or privileges of employment, because--
>> (A)(I) the employee, or another person at the employee's request, has filed a complaint or begun a proceeding related to a violation of a commercial motor vehicle safety or security regulation, standard, or order, or has testified or will testify in such a proceeding; or

49 U.S.C. § 31105(a)  If an employee is allegedly discharged in violation of subsection (a), he "may file a complaint with the Secretary of Labor not later than 180 days after the alleged violation occurred." 49 U.S.C. § 31105(b).

Whether Hollan filed a complaint with the Secretary of Labor is not clear. Judicial review only becomes available, however, when a claimant is "adversely affected by an order issued after a hearing under subsection [31105(b)(2)(B)]." *Id.* It is only under those circumstances that a claimant

> may file a petition for review, not later than 60 days after the order is issued, *in the court of appeals of the United States for the circuit in which the violation occurred or the person resided on the date of the violation*. Review shall conform to chapter 7 of title 5. The review shall be heard and decided expeditiously. An order of the Secretary of Labor subject to review under this subsection is not subject to judicial review in a criminal or other civil proceeding.

Case No. 1:13-CV-1857
Gwin, J.

49 U.S.C. § 31105(d). Therefore, it is only if and when Hollan received an adverse decision from the Secretary of Labor, from which he wanted to appeal, that he must timely file a petition in the federal Court of Appeals where the violation occurred, or where he resided at the time the violation. Nothing in the statute extends subject matter jurisdiction to this Court over any of the allegations set forth in Hollan's Complaint.[7] Accordingly, exclusive jurisdiction to review Hollan's Complaint against the Secretary of Labor rests with the appropriate Circuit Court of Appeals.

### IV. Conclusion and Order

Based on the foregoing, Hollan's Motion to Proceed *In Forma Pauperis* (Doc. No. 2) is GRANTED and the Complaint (Doc. No. 1) is DISMISSED. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith

    IT IS SO ORDERED.


Dated: January 23, 2014          *s/ James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE

---

[7] Although Hollan cites federal question jurisdiction based on the APA, the statute does not provide a federal court with any independent basis for jurisdiction. *See Califano v. Sanders*, 430 U.S. 99, 106-07 (1977).